May it please the Court, my name is Luke Busby, appearing for plaintiff appellants James and Lois Tennier. With leave from the Court, I'd like to proceed for oral argument on this matter. And if I may, Your Honor, I'd like to reserve five minutes for public discourse. If that's okay. Thank you, Judge. The central legal issue presented to the Court for review is whether a disclosure that alone may result in negative amortization is sufficient, where it's certain that a payment schedule provided to any disclosures alone will result in negative amortization. Counsel, you know, this case presents the kind of issue that it just makes you wonder. They've disposed several different places in accordance with several different statutes. And if you pick a number, which your client is, that was lower than what's necessary to amortize the loan, it will be negative amortization in the first quarter. You've said it several times. It seems like what you're saying is unless the bank guesses what your clients would like to do, that they're inevitably going to file because they've got to tell them exactly what the negative amortization is when your clients who have not yet determined how much they're going to pay decide that. How can that be? Your Honor, that's the case because the payment schedule provided in the Truth in Lending Disclosure Statement, which is at page number 331 in the record, provides a payment schedule which shows that the tiers are paying off their loan during a 30-year period, but it doesn't indicate that negative amortization would occur during that period at all. And if you look at that in conjunction with the Deferred Interest Acknowledgement, which is at page number 304, it states very clearly that under your payment options schedule principle and interest, this payment covers interest in principle to pay off your loan within its scheduled term. The scheduled term is 30 years for most loans. When you pay this amount, you will not incur any deferred interest and you will reduce your loan balance. That statement is not true. Well, Your Honor, when you take it into legislation, if you look at what's reported on the note at ER 298, if you look at the warning on the Deferred Interest Acknowledgement, ER 304, it expressly says if you choose this option and the payment is lower than the interest rate due, you will have deferred interest and it will be added to principal balance. So you're saying that if you take a new slated sentence and don't look at the whole picture that they're liable?  It is not, Your Honor. It's my position that nowhere in any of the loan documents does it say that the schedule that was provided in the Truth in Lending Disclosure Statement would result in negative interest. A reasonable person looking at that payment schedule and reading that in conjunction with the Deferred Interest Acknowledgement would presume that negative amortization would not occur during the first 10 years of that loan. What do we do with this? This is another note. The note says each of my initial monthly payments will be the amount of tax. My initial monthly payment was selected by me for a range of initial payment amounts approved by the letter and may not be sufficient to pay the entire amount of interest accruing on the unpaid principal balance. On the Deferred Interest Acknowledgement, it says minimum payment, this is the smallest amount you're allowed to pay if you choose this option, and the payment is lower than the interest due. You will incur a deferred interest, which will be added to the principal balance of your loan. And that there are others. I mean, there are a lot of other quotations. It just seems to me that you are cherry-picking isolated statements, that you say a reasonable person, and what you're saying, a reasonable person only read portions of the disclosure. Is that your position? It's not, Your Honor. I'm taking the information that was provided by the bank at the closing of the loan. And that's indicated in the Truth and Limiting Disclosure Statement. This is a note at base number 307. That's the document in which the junior selected the loan payment that they would be making. And that amount that they chose is the same amount that's indicated on, for the first 12 payments in the Truth and Limiting Disclosure. There's no indication anywhere in the record that this payment, the one that was presented to them at loan closing, would result in negative amortization. We presented evidence in the form of an expert report, properly attested to before the court, saying that for the first 10 years, low negative amortization would occur. And negative amortization, it doesn't mean much, but this is the equivalent of adding $50,000. Counsel, Judge Gould, if I could interject a question of interest to me. Is there anything in the record that shows whether your class received notices of any form from the lending institutions that would show that in this period of time with negative amortization, their loan balance was increasing? That the fact that negative amortization could occur if they didn't make payments that were sufficient to cover principal? No, my question is whether they were shown in any statements they received that their loan balance was going up? Did they give any statements? Yes. I could be mistaken, but I was under the impression from my limited personal experience that when you have a mortgage, you get some statements either regularly or at the end of the year that says what your balance is. Yes, Judge Gould, that would have been the case. Those numbers that would have appeared on those statements would have been a result of the payments that my clients picked after they had purchased the loan from the bank. And they would have an option of one of these four types of payments as indicated. I'm sure you're responding to Judge Gould's question. He asked are there any statements that have been sent to your client which shows the balance? Yes, there are, Your Honor, but they're not in the record. They're not in the record. That's correct. Okay. But presumably, if this bank follows what's typical in the industry, the statement will show the balance after your last payment. And in most cases, that will be a declining balance. But in your case, it would have been an increasing balance. Indeed, Your Honor, and that's essentially why we're here, is the surprise that if my clients were making their payments on the payment schedule, as indicated in the Federal Truth and Lending Disclosure and the Deferred Interest Acknowledgement, that instead of paying down their mortgage, they were accruing more debt, essentially, for the first time. And also, how would they have been surprised by that if they're getting regular statements? Because I think there's two separate factors here, what they believe when they were executing the loan and what they would have believed when they received it. We can talk about that later. Let's put aside whatever they thought when they executed it. Well, sometime after that, as I understand your claim, it's covering a multiyear period. They would be receiving notices showing their balance is going up, but they've also gotten notices that they can choose to pay a higher amount. So it's sort of like, in my mind, like a where's the beef kind of thing, as to what is it that's being unfair to them if they're getting statements. Your Honor, what's unfair is that the information that was provided to them when they purchased the loan wasn't correct. There's nothing in this paperwork that indicates that the payment schedule that was provided to them on the Truth and Lending Disclosure statement would result in negative amortization, as a matter of fact, when it would. Now. Are you saying that with respect to, in other words, you're saying they paid that amount at the beginning, and if they paid that amount it would have resulted in negative amortization in the documentation that you sent out? Indeed, Your Honor. And the position that that acts, that failure to disclose contravenes the disclosure requirements under law is supported by several cases from within this district, and from about Monaco v. Bear Stearns, O'Donnell v. Bank of America, or Peel v. Brooks & Erickson Mortgage Corporation, and the Mincy v. Woldseemans Bank case, which explains quite clearly the problem of describing something as a possibility is a lot different than saying it's certain. Especially when the amount being charged is $50,000. A consumer reading the Truth and Lending Disclosure statement should, under law, see that. Mincy Court stated the problem with Woldseemans Bank's argument is that it is arguing the TILA allows it to disclose something that is false, that negative amortization is merely a possibility when, in fact, it is a certainty. The court concludes that disclosing the possibility of negative amortization is misleading when the reality is that it will occur. It's precisely what happened here. So what do we do with Excerpt to Record 3304, which is the deferred interest acknowledgment, where this is four payment options, and if you go for the minimum payment option, which is the one your client selected, this is the smallest amount that you're allowed to do. If you choose this option and the payment is lower than the interest due, you will incur deferred interest. What do we do with that? There's nothing in the selection, the payment selection document, that indicates that this is indeed the minimum payment. It's our argument that when choosing this payment, this amount of $1,337.87, which is the same amount that's disclosed in the Federal Truth in Lending Disclosure Regulation Z Statement, that the Chairs believed they were paying scheduled principal interest, which is selection number one on document number 304, which clearly says when you pay this amount, you will not incur any deferred interest and you will reduce your loan balance. And it's notable that the Truth in Lending Disclosure Statement states, your payment schedule will be. I think anybody reading that in conjunction with the deferred interest acknowledgement would conclude that the payment schedule would be the same thing as the schedule of the principal interest on the deferred interest acknowledgement. Your clients picked the amount they were going to pay, right? They did, Your Honor. They did, okay. And again, I just want to be sure, because this is not what I'm reading in the record. What I'm understanding you to say is you have these disclosures both ways, but they picked an amount, and when they picked the amount, they were not told that by picking that amount, it would result in a negative amortization. Indeed, they were given an amortization schedule throughout the country. But Matt is wrong. Is that what you're saying? That's exactly it, Your Honor, and that position is directly supported by the testimony of our expert witness in the record. He said negative amortization would occur as a matter of certainty for the first 10 years of the loan, and that would result in substantial costs to my client, somewhere in the region of $50,000. If I may, I'd like to reserve that. You certainly may, if you have two and a half minutes left. Go ahead. Good morning. Kevin Soters on behalf of Wells Fargo Bank. Your Honor, this is a case brought by the appellant's plaintiffs in the district court, which simply has too many deficiencies for the appellant to avoid some re-counselment against them. The court has already heard some arguments and representations regarding a central issue, which affects all five of the separate causes of action before today. And there are also some claim-specific deficiencies, which I intend to go over. Just to pick up where the court, on something the court had noted, what did you respond to Judge Smith's last summarization of the case of your opponent? And that being that, let me restate it. My understanding is their position, contrary to what the paper would say, but my understanding is they're saying they'd like to exit the payment. They received an amortization schedule that suggested that that was sufficient to avoid negative amortization. In fact, your expert testified that in the first 10 years, picking that figure, they would have a negative amortization somewhere in the $250,000. Is that true or false? I would say that it's not consistent with the evidence as a whole, if we look at the truth of the claim. Is it true or false? Was there a misstatement of whether there would be dignity amortization based upon the number that they chose to pay? I don't believe it's true that there was a misrepresentation. You don't believe it's true? Excuse me. I don't believe that there was any false representation. Okay. Let me ask you this. I forget what the number was. Whatever the number was that they picked, if that was paid on a monthly basis, would that have resulted in a negative amortization in the first 10 years? Most likely for the first few years. Okay. Now, they take the position that they were told that that was not going to be negative. What's your response to that? My response to that is that if we look at the documents as a whole, including the recruitment and disclosure statement, towards the bottom of the documents, it's your contact documents for additional information, do I not have payment default, any required repayment, install before the scheduled date, and other important terms and conditions of your loan. We have several documents which were attached to the Motion for Summary Judgment as exhibits which the borrowers have acknowledged, admitted that they signed. We have the promissory note, which your Honor mentioned already, and the language in that. Just to cut you in, Jason, I mean, I see, and I've been quoted to the closing counsel, are many statements in the documentation making it clear that if you pay an insufficient amount, you're going to have negative amortization. What is new to me, and frankly, very troubling, is the concept that they picked a number and were told that it wouldn't be negative amortization, and you seem to sort of be confirming that in the first few years, there would be negative amortization. I'm going to ask the closing counsel for the documentation that says they were told or it shows that there was no negative amortization when he gets back up there, but if it does show that, you've got a problem, don't you? Again, I don't think when we take the documents, that's a whole that it is a problem. I don't believe that. Let's just say you have page X and then X says, if you pay X, there will be no negative amortization. It doesn't really matter what else is out there. If that's false, you've got a problem, right? Potentially. Potentially. Actually. And your Honor, in this case, the closing counsel seems to be the counsel, your opposing counsel is relying on the disclosure required by regulation C that's at ER 331, I believe it is. And if, what did you respond to? Is that the key right here? I would say that's an important part of the conversation. Yes, I don't believe that this is the argument, the same argument as the balance opening brief, and certainly not made and supported in the district court. What we had in the district court were numerous references directing the district court to a non-moving party, to avoid some rejection brought by a moving party who has supported this motion. Counselor, just to be clear, at least from my perspective, what I'm troubled about, you know, even though I've seen lots of amortization sketches over the years, the whole open parking, the whole thing, I used to calculate those when I practiced law. And if I put in a note the amortization schedule that was false, it's wrong. Even though if I said in a disclosure statement that if you have negative amortization, if you have no pen, if you have negative amortization, if I told you that the note called for full amortization, it was, you know, whatever, 30 year, whatever, and it was false, it wouldn't matter. I had some general disclaimer out there, wouldn't it? It may. But your Honor, as false as any, he seems to be saying that the amortization schedule falsely represented what would happen if he made the agreement made. And in this case, to your Honor's earlier point, essentially the argument from the appellants would put the lender in a position of having to guess as to how, or put it in a way. I think the question. It's really straightforward. They give you a number. You plug it in. It's real simple. And if the number doesn't provide for full amortization, then you have negative amortization. It's really simple. They say they gave you a number. You said it was funny. It wasn't giving you negative amortization. Is that true or false? I believe the statements in the disclosure statement are correct. So. Which statement is it? In the Truth in Lending Disclosure Statement referred to by the appellants. As far as the. This is. We're talking about the same thing. Are you talking about page 331 of the record? ER 331. I have it marked as that. 333. All right. What's the difference between 331 and 333? They both look the same. And. If I may grab that. Oh. And 331 is the document signed by Arthur James DeNere. 333 is the document signed by Lois Jean DeNere. They're the same. It's the same document. All right. Fair enough. Fair enough. But what is there in that document that discloses that there is negative amortization? It just lists a whole bunch of payments for the first year. It's $1,337 a month. The second year, $1,400 a month. Third year, $1,500 a month. At some point, as I understand your papers, negative amortization stops. And I can't tell whether that's in the end of ten years or the end of six years or whatever. But for the last 20 years of this loan, the plaintiffs here would be paying $3,100 a month compared to $1,337 they start out with. Yes. In this document itself, I refer you forward to the language near the bottom, which I went over, which essentially refers to the other loan documents. Where is the language you're talking about? Just above the signature line, starting with your contract documents. Oh, in the tiny print? It's hard for me to read, but it says, See your contract documents for additional information. Yes. About nonpayment default, required repayment default. But there's nothing in there about amortization, is there? Or negative amortization? Not specifically in that language. So you can't really rely on that? You may have a better argument with the language that's right below the schedule. It says variable rate. This loan contains an adjustable rate feature. See the adjustable loan program disclosure statement previously given to you. As a matter of fact, if you look at this schedule, it's very obvious that there would be negative amortization because your show-off is really low, not where you get to a high number to pay the whole thing off. Isn't it self-evident that there would be a negative amortization with this schedule? I think that's a reasonable inference. How is that an inference? Is it true? Counsel, could you please respond to the question I posed to your adversary? Just if there's evidence in the record that shows that the NFs would have been receiving statements that really for 10 years or so would show their balance increasing. I don't believe that there is evidence of that in the record other than the acknowledgment from my staff last week or today. Okay, thank you. And if I may, I would just like to briefly talk about some claims-specific deficiencies in the five remaining costs of action on which the judiciary is going to be expressed in summary judgment. With respect to the first, which I'm having a troubling thought. You know, Wells Fargo has had some issues of late. This is not, I gather, part of any program that people would be told one thing, and in fact, something else was going on behind the scenes. To my knowledge, the original lender was World Savings Bank. Okay. This is World Savings Bank's documentation, not of Wells Fargo's. Correct. Wells Fargo is the successor to interest. Okay. And then just briefly on the claims-specific deficiencies, with respect to the first cost of action, they include fraudulent omissions. Under Harris 11.190, subsection 3, there's a three-year limitation period for fraud-based claims. This loan and these disclosures, the origination of the clause only occurred in 2007. The complaint was not filed until just under six years later in 2013. So they're well beyond the three-year limitation period. That would only apply to the Nevada statute claim, right? It wouldn't apply to the federal claim, would it? According to the filings from the appealants in this case, in opposition to a motion to dismiss, they explicitly stated that they have not brought any claims under federal law, are not seeking any remedy under federal law. These complaints have been referred to Nevada law, which, again, they haven't really even specified. But under Nevada law, with the fraudulent omissions claim and the two deceptive practices claims based on the alleged fraud, the three-year limitation period should apply. If there were a truth-in-the-minding claim, I think it would be barred by the one or three-year limitation periods. In the other case, we're looking at about six, nearly six years later when this complaint was filed. So I think we have a problem. Mediation began in July of 2010, and the suit was filed in December of 2013. So right there is over three years. And the loan is starting after six years. The loan was executed, I believe, December 7th, 2007. So that's where the six-year period comes from. Just to close, I would add on the deceptive trading practices claims, and that's 41.1390. It requires that there be a confidential relationship. Excuse me. 41.1395 requires a confidential relationship between the parties. We don't have that here. We have this lender-borrower relationship. And also we have the appellants referring to their ex-birds affidavit with respect to breach of contract and breach of the inside covenant. He doesn't comment on those. He doesn't directly address those. So it's really of no support. We just have their allegations in the second minor complaint. Thank you. Thank you, Counselor. Mr. Busby, you have some reserved time, but I'd like you to answer the question. What specific evidence in this record is your client relying on for the claim that there was a fraudulent omission by, presumably, World Savings, but with respect to this loan? I'm glad that you're here. In the second amended complaint, the allegations factor that the transaction was specifically verified by Mr. Tenier on the last page of the complaint, which is at page 125, that evidence is presented in this report, as well as the affidavit and report of Kevin Kirkendall. And just a big picture for one moment. Do I make that that's the claim? I'm asking you what is the evidence in the record on which your client relies for the fraud that you're alleging? Your Honor, if I may, the false statements in the Federal Truth in Lending Disclosure, the Regulation C statement, and I think it's number 331 and 333. So are you relying on that Regulation C disclosure? Yes, Your Honor. Anything else? The statements in the note and the statements in the deferred note. The notice is against you. The notice is locked in uptight as it was. Well, Your Honor, the note says, I'll make payments of principal and interest. It doesn't explain that if you follow the payments schedule that's provided in conjunction with the note, you're going to end up accruing $50,000 in additional debt on this product that you're arguing. Counsel, either you misspoke or I misunderstood. I thought you said that your claim is that your clients were told, either in a amortization chart or a statement, that if they paid the amount they selected, that there would be no negative amortization. Is that true or false? That is the case, Your Honor. And that's in the documentation. The deferred interest acknowledgement, under your opinion and options, number one, it states the scheduled interest. What's the year? It is number 304. You're saying that that is a representation of the lender, that if they paid the amount, it indicated there would be no negative amortization, and that's your claim? That's exactly it, Your Honor. And which one of those four? You've got one, two, three, four. It's number one. And it's the last sentence of number one, Your Honor, which very clearly states, when you pay this amount, you will not incur any deferred interest, and you will reduce your loan balance, which was not the case based on the schedule that was provided to my clients during close, which is debates number 331 and 333. That's if you select that option. But that's not the option that your client selected. Your client selected the option three, the minimum payment option. The smallest amount you're allowed to pay. Your Honor, the question on schedule shows that it goes from $1,300 all the way up to $3,000. Indeed, Your Honor, but there's no connection made between the truth and lending disclosure statement that says that the schedule we're providing to you represents the minimum payments in the deferred interest acknowledgement. What it says is your payment schedule will be this. And when you look at the deferred interest acknowledgement, it says scheduled principal and interest. That word, scheduled, is key. What's the schedule? How do I pay off this loan? Any person looking at this would think that if they selected the payment amount, the initial payment amount, $1,337.87, that they would be paying their scheduled principal and interest. That was not happening. That's your construction of it. But the bottom line is, if we look at 304, that's the universe of your claim, right? It's a little horse there. If we don't see it there, it doesn't exist. Is that correct? That is correct, Your Honor. And the dispute in this case is really about what this very complex paperwork means. And it's battle of the experts. Here we have a situation where we have more and more and more complicated loans in order to produce people. And your position is that the more complicated they are, the better excuse there is for not paying because they're so complicated? Your Honor, I think what happened here was, essentially, there was profit built into this loan for the bank. That's why people had money. And that profit came on what they were entitled to, based on the terms of the documents that were presented to my clients. So I think we understand your position. Your time has exceeded. The case just argued will be submitted for a decision. And the court will take a ten-minute recess. Thank you.
judges: O'scannlain, Gould, M. Smith